IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-1023
════════════
 
In re Allied Chemical 
Corporation et al., Relators
 
 
════════════════════════════════════════════════════
On Petition for Writ of Mandamus
════════════════════════════════════════════════════
 
 
Argued November 
16, 2005
 
 
            
Chief Justice Jefferson, joined by 
Justice O’Neill, Justice 
Wainwright, and Justice 
Johnson, dissenting.
 
            
On August 9, 2004, the trial court signed an order identifying five trial 
plaintiffs, consolidating their claims for trial, and setting a February 14, 
2005 trial date. It later reset the trial for June 6, 2005. Relators sought 
mandamus relief from the consolidation order. The landscape has changed since 
then. On May 20, 2005, after this Court stayed the case, the trial court vacated 
its previous consolidation order and directed that only Guadalupe Garza’s 
personal injury claims proceed to trial. After that, Garza and other plaintiffs 
supplemented their discovery responses—identifying causation witnesses—and 
produced affidavits relators say they require for trial. Consequently, the two 
bases upon which relators sought mandamus–improper consolidation and a trial 
setting before causation evidence had been produced–are no longer at issue. The 
Court nevertheless uses this case to create a procedural rule that, for the 
first time, creates an inactive docket for “complex mass tort cases like this 
one.” ___ S.W.3d ___. While I can appreciate the utility of such a rule, I 
cannot countenance its adoption in a moot case. Accordingly, I respectfully 
dissent. 
            
At the time relators filed their mandamus petition, their complaint focused on 
the consolidation order, as they alleged that the “trial court’s August 9, 2004 
order is an abuse of discretion that leaves Relators without an adequate remedy 
by appeal.” They presented two issues: (1) whether it was an abuse of discretion 
for the trial court to consolidate cases involving five different plaintiffs, in 
contravention of In re Van Waters & Rogers, Inc. and in the absence 
of an adequate response to the Able Supply interrogatory; and (2) whether 
there was an adequate remedy by appeal. Relators asserted that “the issue in 
this mandamus proceeding is not the plaintiffs’ failure to answer 
the Able Supply Interrogatory, but rather the effect of that failure on 
trial consolidation.” (Emphasis in relators’ brief on the merits, at 30-31.)
            
Today, despite the trial court’s deconsolidation, the Court conditionally grants 
the writ to resolve an Able Supply problem that is not, strictly 
speaking, before us. See Able Supply v. Moye, 898 S.W.2d 766, 768 (Tex. 
1995). The Court prohibits the trial court from setting “any of the plaintiffs’ 
claims for trial until the defendants have a reasonable opportunity to prepare 
for trial after learning who will connect their products to plaintiffs’ 
injuries.” But the plaintiffs have supplemented their responses to provide that 
information. The Court has thus abated trial until the real parties satisfy a 
condition that has already taken place. While I can appreciate the Court’s 
frustration with the procedural history of this case, mandamus is inappropriate 
when: (1) plaintiffs have supplemented their discovery answers to reveal the 
names of those who purport to connect the products with the injuries; and (2) 
the defendants do not contend that the supplementation is inadequate under 
Able Supply. 
            
In September 2005, plaintiffs supplemented their discovery responses with 
reports from nine experts: a hematologist/oncologist, two toxicologists, a civil 
engineer, an industrial hygienist, two environmental engineers, an 
epidemiologist, and a former DuPont research chemist. One of those experts, 
Frank Gardner, M.D., clinical professor of medicine at the University of Texas 
Medical Branch in Galveston, concluded (after reviewing Garza’s hospital and 
clinical records) that:
 
[Garza] 
lived in the vicinity of the HS facility, and had prolonged exposure to 
pesticides. The chronic exposure to high risk levels of organochlorine 
pesticides were the cause, with more probability than not, for [her] onset of 
non-Hodgkins lymphoma.
 
            
William R. Sawyer, Ph.D., a toxicologist, calculated Garza’s exposure doses of 
organochlorine pesticides and concluded:
 
I am 
certain, to within a reasonable degree of toxicological certainty that Ms. 
Garza’s chronic exposures to DDT, dieldrin, BHCs, and toxaphene released from 
Hayes-Sammons significantly contributed to the onset of her NHL. My review of 
her historical medical records, direct interview, and inspection of her 1016 
Nicholson Street home failed to provide any other significant occupational or 
environmental exposures contributing to the onset of her NHL. 
 
            
The Court’s opinion does not analyze these expert reports, perhaps because they 
were filed after the trial court’s order setting Garza’s case for trial. But we 
cannot ignore the fact of their production. Garza has supplemented her response 
to the Able Supply interrogatory, and the trial court is in the best 
position both to evaluate the reports and to fashion relief where appropriate. 
Thus far, relators have not challenged the reports’ adequacy in the trial court, 
and we should not presume that the court would abuse its discretion if called 
upon to make that determination.[1] 
            
Our rules provide remedies for incomplete discovery responses. Relators can move 
to compel adequate responses, or they may seek sanctions for discovery abuse; 
they may file no-evidence motions for summary judgment before trial or motions 
for directed verdict during trial.[2] Relators have not availed themselves 
of the pretrial methods, instead seeking extraordinary relief from this Court in 
the first instance. The Court likens this case to Able Supply, but there 
is a critical difference. Before the Able Supply defendants sought 
mandamus relief, the plaintiffs had refused to answer, and the trial court had 
declined to compel, the answer to the defendants’ interrogatories. Able 
Supply, 898 S.W.2d at 768. Only then did we order the trial court to grant 
the motion to compel. 
            
 By contrast, relators here do not seek an order compelling an answer to 
the Able Supply question, but rather a special rule for, as the Court 
puts it, “complex mass tort cases like this one.” ___ S.W.3d ___. After the 
trial court deconsolidated the cases, relators’ issue shifted—they now seek an 
“order prohibiting the trial court from setting any plaintiff’s claim for 
trial unless that plaintiff has first provided an adequate answer to the Able 
Supply Interrogatory.” (Emphasis added.) At argument, relators conceded that 
they were asking us to create, in effect, an inactive docket for mass tort 
cases. 
            
In other areas of the law, the Legislature has created rules for certain types 
of cases in which a threshold showing is necessary before the case may proceed. 
In cases involving health care liability claims, for example, an expert report 
showing causation must be filed not later than 120 days after suit is filed, or 
the case will be dismissed. Tex. Civ. 
Prac. & Rem. Code § 74.351. For claims involving asbestos or silica, 
expert reports must be served on defendants within thirty days of their answer 
or appearance date. Tex. Civ. Prac. 
& Rem. Code § 90.006(a). Similarly, through our rulemaking process, 
we have provided that in any pending case, after an adequate time for discovery, 
a party may move for summary judgment on the grounds that there is no evidence 
of causation. Tex. R. Civ. P. 
166a(i).
            
Rather than make such changes by judicial decree, the better practice is to 
enact these reforms in conjunction with our rulemaking procedure, or when public 
policy mandates, by legislation.[3] A statute or rule could provide the 
precision that is lacking in the Court’s opinion. For example, what is a 
“complex mass tort case[]”? __ S.W.3d at __. Do class actions qualify? What 
about multidistrict litigation? What is the requisite number of plaintiffs? What 
time period gives defendants a “reasonable opportunity to prepare for trial 
after learning who will connect their products to plaintiffs’ injuries”? 
Id. at __. What is the penalty for noncompliance? Under the Court’s new 
rule, these determinations will be made on an ad hoc basis, with little 
guarantee of predictability or uniformity. 
            
More puzzling is the effect of the Court’s ruling on this case. The Court orders 
that, before trial may commence, the plaintiffs must reveal the witnesses who 
will testify on causation and give the defendants a reasonable opportunity to 
prepare for trial after receiving that information. But Garza supplemented her 
discovery responses in September 2005, almost two years before the Court 
conditionally issued today’s writ. Presumably, therefore, when the stay is 
lifted, the trial court will be free to set Garza’s case for trial. I can only 
surmise, then, that the Court’s motivation is to evade the laborious process 
inherent in rulemaking or legislation and create a blanket rule barring trial in 
any “mass tort” case until the plaintiff names a causation expert. This should 
occur by rule or statute, after comment, rather than by opinion when the 
question presented has disappeared from the case.
            
The Court contends the case is not moot because its stay order “preserved the 
parties’ positions as they were at the time, not as they hustled to change them 
thereafter.” ___ S.W.3d ___. But we do not grant mandamus relief when it would 
be of no practical effect, or “if for any reason it would be useless or 
unavailing.” Dow Chem. Co. v. Garcia, 909 S.W.2d 503, 505 (Tex. 1995) 
(quoting Holcombe v. Fowler, 9 S.W.2d 1028, 1028 (Tex. 1928)). Nor do we 
grant it before the trial court has been asked to act. Axelson, Inc. v. 
McIlhany, 798 S.W.2d 550, 556 (Tex. 1990) (noting that mandamus was 
“improper” when relators could not “point to an order of the trial court 
refusing their most recent request” to conduct discovery). The Court seems to 
recognize as much, relying on the “capable of repetition but evading review” 
exception to the mootness doctrine. Blum v. Lanier, 997 S.W.2d 259, 264 
(Tex. 1999). But that “rare” exception requires a reasonable expectation that 
the same action will recur (with no appellate recourse) if the writ were 
withheld, and we have no indication that is the case. Id. Utilizing the 
exception to justify mandamus relief here can only be based on an expectation of 
the trial court’s future abuse of discretion, but we generally presume that our 
judges follow the law. Finally, the case will not “evade review.” If the 
discovery responses are inadequate and the trial court fails to compel further 
response, relators have the right to mandamus relief, as recognized in Able 
Supply. 
            
While I agree that defendants in mass tort cases face difficult hurdles in 
preparing for trial, and while I also agree that causation-related discovery 
must not be delayed,[4] I disagree that this case presents the 
opportunity for us to create special rules for such cases. The trial court 
withdrew its consolidation order. Garza has supplemented her discovery 
responses, and the trial court has not been asked to evaluate their adequacy. I 
would deny mandamus relief. 
 
 
            
_________________________
            
Wallace B. Jefferson 
            
Chief Justice 
 
OPINION 
DELIVERED:     June 15, 2007  






[1] 
Although we stayed the underlying proceedings, relators could have moved to lift 
the stay so that the trial court could make this determination, just as the real 
parties moved to lift the stay so that the trial court could consider their 
motion to deconsolidate. See also Terrazas v. Ramirez, 829 S.W.2d 712, 
715 (Tex. 1991) (granting parties’ motion to lift stay so that trial court could 
consider proposed settlement).

[2] 
Rule 215.1(b)(3) provides: “[I]f a party fails . . . to answer an interrogatory 
submitted under Rule 197; . . . the discovering party may move for an order 
compelling . . . an answer . . . or apply to the court in which the action is 
pending for the imposition of any sanction authorized by Rule 215.2(b) without 
the necessity of first having obtained a court order compelling such discovery.” 
Tex. R. Civ. P. 215.1(b)(3). 
Moreover, “an evasive or incomplete answer is to be treated as a failure to 
answer.” Id. 215.1(c). 

[3] 
Our rulemaking procedures include consideration of comments from the bench, bar, 
and the general public, and we have modified or changed each set of civil 
procedure, evidence, and appellate rules proposals since 1997 as a result of 
those comments. 
http://www.supreme.courts.state.tx.us/advisory_archives/ra_100903.htm (last 
visited June 13, 2007 and copy available in Clerk of Court’s file).

[4] 
Nor do our rules sanction such delay. See Tex. R. Civ. P. 193.5(b) (providing 
that supplemental discovery responses be made “reasonably promptly after the 
party discovers the necessity for such a 
response”).